# Staunton.

IDA M. MILLER v. FERGUSON AND OTHERS.

September 16, 1909.

1. HUSBAND AND WIFE—*Contingent Right of Dower—Purchase of Debts Against Husband.*—A married woman may lawfully sell her contingent right of dower in her husband's land and use the purchase money to acquire judgments against her husband.

2. FRAUDULENT CONVEYANCE—*Husband and Wife—Presumption—Rebuttal.*—In a contest between a wife and the creditors of her insolvent husband over property acquired during the coverture and conveyed to the wife, the presumption is that the husband furnished the consideration, and that the property is his, but this presumption may be rebutted by proof, and is rebutted when it is shown that the husband could not, or that he did not, furnish the consideration, and that it must have emanated from a source other than the husband.

3. HUSBAND AND WIFE—*Issue of Stock to Wife—Consideration.*—If it is shown that the husband furnished no valuable consideration for stock issued by a corporation to the wife, then his creditors could have suffered no injury by reason of the issuance of the stock to the wife, and even if it was erroneously or improperly done that furnishes no ground of complaint on the part of the husband's creditors.

Appeal from a decree of the Circuit Court of Wythe county in a suit in chancery in which appellant filed her petition. Decree for the defendants. Petitioner appeals.

*Reversed.*

The opinion states the case.

*Dupuy & Whittle,* for the appellant.

*Robertson, Hall, Woods & Jackson,* and *Robertson, Smith & Wingfield,* for the appellees.

KEITH, P., delivered the opinion of the court.

From the opinion just handed down in the case of *Miller* v. *Ferguson, et als, ante,* p. 217, it appears that "The original suit was brought by the appellant, Thomas W. Miller, against the appellees, Ferguson and Terry, to enforce an alleged parol agreement between the parties for the purchase of the 'Miller Hill' property, in the city of Roanoke, upon the stipulations that Terry and Ferguson were to advance the purchase money, and the property when acquired should be divided into lots and sold, and, after defraying expenses and refunding the purchase price, with interest, the net profit arising from the sale was to be shared equally by the parties.

"The circuit court dismissed the bill, but on appeal this court reversed the decree, and, having established the partnership as outlined above, remanded the case with directions that unless the parties in interest could reach an agreement among themselves the circuit court should sell the property upon such terms as it might prescribe and dispose of the proceeds of sale in accordance with the views expressed in the written opinion of this court.

"The parties failing to agree, the land was sold, and it is admitted that the net proceeds of the sale amount approximately to $18,000.

"We shall dispose of the contention of the appellant, that he is entitled to the entire fund under the former decision of this court, by the statement that the circuit court has correctly interpreted the opinion and decree of this court in holding that Miller 'was a partner in the land transaction in the bill and proceedings mentioned, and, as such, was entitled to one-third of the proceeds of the sale of the land, after defraying the expenses of obtaining the same and refunding the purchase price thereof with interest.'"

The principal question decided in that case was that Ferguson and Terry held, as assignees, a judgment recovered by the

Fidelity Loan and Trust Company against Miller, the amount due upon which they had the right to set off against the costs awarded Miller in this court, and to subject his interest in the fund under the control of the court to the satisfaction of that judgment; and the decree of the circuit court in these respects was affirmed.

While the case was pending in the circuit court Ida Miller, the wife of Thomas W. Miller, filed her petition, in which she claimed to be the owner of two judgments against her husband, upon which executions had issued, by virtue of which she had the first lien upon the fund due Miller by Ferguson and Terry, and prayed that so much of that fund be decreed to her as might be sufficient to satisfy her demands.

Ferguson and Terry answered the petition of Ida Miller, and denied that she is the holder of the judgments claimed by her, and insisted that the supposed assignments under which she claims were a mere device for the purpose of hindering and defrauding the creditors of her husband; that at the time the judgments were assigned she and her husband were living together as husband and wife, and are still so living; that said Miller was, and still is, heavily indebted and financially embarrassed, and did not have and has not sufficient property with which to pay his debts, and was and still is insolvent. It is denied that either of said judgments constitute a lien upon the fund under the control of the court, and they especially deny that the judgments constitute a superior lien to any other liens upon the said property.

To this answer of Ferguson and Terry, so far as it was treated as a cross-petition praying affirmative relief upon their part, answer was made by Ida Miller, who denied that the judgment set up in her petition had been paid off or discharged, or that her husband had in any sense contributed to the purchase of said judgments with any means of his own. Her answer avers that as the wife of Thomas W. Miller she had a contingent dower interest in his real estate; that one G. H. P. Cole

desired to purchase and acquire good title to a parcel of land in
Roanoke city owned by Miller, and in order to perfect his title
he desired to have a conveyance made to him of the land, in
which she should unite; that Cole with his own means pur-
chased from the Melrose Land Company its judgment against
Miller, and had the same assigned to H. M. Darnall, trustee,
in trust, first, that Cole should be entitled to the proceeds of the
sale of said lot, which is situated on Pine street in said city;
second, for the payment to Ballard P. Huff of a note of $200,
made by Thomas W. Miller and endorsed by James H. Camp-
bell; and that thereafter all the rest and residue of said judg-
ment was to be for the benefit of respondent, and in considera-
tion of such assignment she did execute a deed surrendering
and relinquishing her contingent right of dower to the land so
purchased by said Cole; and that Cole has received the pro-
ceeds of the sale of the land or the land itself, and the balance
of the judgment, which is set forth in her petition, is the
property of respondent.

Further answering she says, that in the spring of 1906 she
acquired, through George T. Ellis, and not through her hus-
band, a one-fourth interest in the option to purchase from
Ballard P. Huff and others some three hundred acres of land
adjoining the city of Roanoke, and that subsequently she sold
her option to said one-fourth interest to the Virginia Heights
Corporation, in consideration of $7,500 of the common stock
of said company issued to her, and conveyed her one-fourth
interest in said land to said corporation, in consideration of
the issue to her of said stock; that the stock issued to her rep-
resented no actual money paid out by her or any of her asso-
ciates for said stock; that the same was issued upon an esti-
mated value placed upon the land in excess of its purchase
price; and that soon after the organization of the company the
value of the land so far increased as that she received offers
in cash for her stock, which she accepted; that one Gertrude
Blair acquired a judgment of the Peoples National Bank of

Lynchburg against Thomas W. Miller, as set up in her petition, and it was agreed that if respondent would pay the sum of $300 to said Gertrude Blair for said judgment, the same would be assigned to her; that thereupon she executed a note, dated the 3d day of March, 1906, payable to said Gertrude Blair four months after date, in the sum of $300, and gave to said Gertrude Blair, as collateral security for its payment, a certificate for ten shares, aggregating $1,000, of the common stock of the Virginia Heights Corporation; and thereafter respondent sold said stock and out of the proceeds thereof paid to said Gertrude Blair, on the 25th day of July, 1906, $300 and took up the note, which she now files as an exhibit with her answer.

Upon the issues thus made evidence was taken, which resulted in the dismissal of Ida Miller's petition; and from that part of the decree of the circuit court she filed her separate petition for an appeal, which was allowed.

We have no difficulty in holding that the judgments in question were regularly obtained, have been duly kept alive by the issuance of executions, and are valid and subsisting liens in the hands of Ida Miller. Indeed, the only serious attack upon the judgments consists in the allegation that Thomas W. Miller, directly or indirectly, paid the consideration for the assignments, which ought to have been made to him, thereby extinguishing the judgments, but were in fact made to his wife, with the fraudulent purpose of hindering and delaying his creditors.

Mrs. Miller, without doubt, had a dower interest in the lot mentioned in her petition. G. H. P. Cole acquired this lot and wished to have her dower relinquished, in order to perfect his title. To that end he acquired the judgment against Thomas W. Miller, known in the record as the "Melrose" judgment, and assigned it to Darnall, upon the trust that the proceeds of the lot should go to Dr. Cole; that a note for $200, for which Messrs. Miller and Campbell were bound to Mr. Huff, was to be paid out of the proceeds of the lot; and that the residue

.should be paid to Mrs. Miller. The title of Cole, who bought this judgment with his own money from the Melrose Land Company, .cannot be questioned; and he, for reasons satisfactory to himself, assigned it to Darnall, upon certain trusts; and those trusts, so far as they were antecedent to the rights of Ida Miller, have been satisfied.

With respect to the Blair judgment, it appears that Gertrude Blair had purchased a judgment in the name of the Peoples National Bank of Lynchburg against Thomas W. Miller, which was duly assigned to her; that later on she sold this judgment to Ida Miller for $300; that Ida Miller executed her note for this sum and gave as collateral security for its payment a certificate of $1,000 of the common stock of the Virginia Heights Corporation, which she then owned; and that this stock was sold to one Bandy, and the note paid.

It is claimed that this stock really belonged to T. W. Miller. The history of the stock, so far as it can be gathered from the record is as follows: Certain parties conceived the idea of getting an option upon a tract of land known as "Solitude Farm," near the city of Roanoke. The price paid for the option was $1,000, $500 of which was furnished by Markley and the residue of $500 by George T. Ellis. They then proceeded to organize a company, the capital stock of which was to be $30,000, which was divided between Ellis, Markley, one M. A. Riff, and Mrs. Miller. That the stock was so issued to her is beyond doubt. It is also true that by one of those freaks of fortune which sometimes occurs in speculative enterprises, that stock became of such value that the ten shares placed as collateral for the note of $300 to Gertrude Blair, when sold were more than sufficient to extinguish that note. The only question, therefore, is whether that stock should have been issued to Ida Miller or to her husband.

Just why it was issued to her does not clearly appear. If it had been issued to Thomas W. Miller, however, upon the facts in this case, and the *bona fides* of his title had been called

in question, it would have been equally true that the proof before us would have been equally unsatisfactory. It appears that the Virginia Heights Corporation was not indebted to Thomas W. Miller; that he did not furnish a dollar towards its organization; that for whatever services he rendered to it he was paid in cash.

It is true that in a suit by creditors of an insolvent husband to subject to the payment of their debts property acquired during the coverture and conveyed to the wife, there is a presumption that the husband furnished the consideration, and that the property is his; yet that presumption may be rebutted by proof, and is rebutted when it is shown that the husband could not, or that he did not, furnish the consideration, and that it must have emanated from some source other than the husband, *Kinnier* v. *Woodson,* 94 Va. 711, 27 S. E. 457.

The proof to which we have adverted at least shows that the judgment was acquired by means other than her husband's. We have seen that he furnished no money for the formation of the corporation; and that for the services which he rendered he was duly compensated. Mrs. Miller was one of the incorporators. The stock was issued in her name, and if it is made to appear that her husband furnished no valuable consideration to the company, certainly his creditors suffered no injury by reason of the fact that the stock was issued to his wife, for if it were erroneously or improperly done, that may have been a wrong to the creditors and other stockholders of the Virginia Heights Corporation, but it furnished no ground of complaint upon the part of the creditors of Thomas W. Miller.

We are, therefore, of opinion that the decree of the circuit court, in so far as it dismissed her petition, was erroneous and must be reversed.

*Reversed.*