𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

## JOHNSON V. ABLES.

September 11, 1916.

1. HUSBAND AND WIFE—*Conveyance to Wife—Assault by Husband's Creditors. Presumption—Burden of Proof.*—In a suit by creditors of an insolvent husband against the wife, the presumption is that every conveyance or transfer of real or personal estate made to the wife, during the coverture, either by her husband or a third person, is founded upon a consideration furnished by the husband, and is voluntary and void as to his existing creditors, and the burden is upon the wife to show by clear and satisfactory evidence that the consideration was in good faith paid by her out of her own estate, and not by her husband. This presumption is based upon the relationship of the parties and the facilities afforded for committing fraud, and exists notwithstanding the emancipation of married women as to their property rights.

Appeal from a decree of the Circuit Court of Lee county. Decree for the complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Davidson & Robinette, Pennington & Cridlin* and *Pennington & Handy,* for the appellant.

*B. H. Sewell, J. C. Noell* and *M. G. Ely,* for the appellee.

KELLY, J., delivered the opinion of the court.

This suit in equity was brought by C. P. Ables to have certain real estate standing in the name of Arzelia Johnson subjected to the satisfaction of a judgment against her husband, W. M. Johnson.

The allegations of the bill, stated with sufficient particularity for the present purpose, are, that Ables recovered a judgment in December, 1914, against W. M. Johnson, which was duly docketed, on which an execution was returned "no property found," and which was still unpaid; that the debt on which said judgment was obtained was in existence at the time of the execution of the deed next herein mentioned; that on March 31, 1913, R. L. Pennington, commissioner, and others, conveyed the real estate aforesaid to Arzelia Johnson by a deed the recitals in which showed that a total consideration of $4,000 had, as to $3,500 thereof, been paid by her, and as to the residue would in the future be paid by her; that the recitals in said deed were untrue; that she did not in fact pay any of the consideration; that her husband, W. M. Johnson, bought and paid for the land, and had the conveyance made to his wife, with intent to hinder, delay and defraud his creditors.

Johnson and wife filed a joint and separate answer, admitting the existence of the judgment, stating that it had not been paid, for the reason that W. M. Johnson had no property, but denying the charges of fraud, and averring that the land was bought and paid for with funds belonging to Arzelia Johnson. There was a general replication to this answer.

No depositions were taken in the cause. Sundry deeds to and from W. M. Johnson, conveying certain other lands, offered by counsel for Ables apparently for the purpose of showing by the real estate transactions of W. M. Johnson that he must have had money

with which to pay for the lands in suit, were received and considered by the circuit court over the objection of counsel for Johnson and wife. This objection was preserved and is renewed here. Without actually passing upon it, we may, for the purposes of this discussion, assume that the objection was good, and thus treat the case as if it had in fact been, as counsel for appellant contend it should have been, submitted solely on the bill, answer and general replication.

The circuit court, being of opinion that the deed of March 31, 1913, was "voluntary and fradulant, in so far as complainant's judgment is concerned, and without any valuable consideration on the part of said Arzelia Johnson, and that the defendant, W. M. Johnson, furnished the money with which said land was purchased," directed and entered a decree awarding the relief sought by the bill. From that decree this appeal was obtained.

It is readily apparent that the decisive question in the case is as to the burden of proof in a contest between the existing creditors of an insolvent husband, on the one side, and his wife, on the other, when the property in controversy is claimed by her under a purchase, not from her husband, but from a third party. No Virginia case has been found in which this question has arisen simply upon bill and answer, and none, therefore, in which it has been presented for decision purely upon the legal presumption applicable and in a form so succinct and clear cut as here.

The key to the decision must be found in the correct rule of evidence bearing upon the italicized language of the following proposition, too firmly embodied in the jurisprudence of this State to permit of any but a legislative modification, even if any modification be desirable, to-wit:

"It is settled law in this State that in a contest be-
tween the existing creditors of an insolvent husband
and his wife, touching an alleged purchase from her
husband *or from another with means furnished by him*,
the transaction is *prima facie* presumed to be actually
fradulent and the burden is on the wife to show by
clear and satisfactory evidence that the consideration
was in good faith paid by her out of her own separate
estate and not by the husband." See *Atkinson* v. *Solen-
berger*, 112 Va. 667, 672, 72 S. E. 727, and authorities
there cited.

This proposition is not challenged by counsel for
appellant; but they contend that when the conveyance
is from another than the husband, there is no presump-
tion that the purchase was made with the husband's
funds, and that before there is any presumption of
fraud the creditors *must first affirmatively prove the
fact* that his funds paid for the property. The ap-
pellee, on the contrary, contends that every purchase
made by the wife of an insolvent husband, whether
from the husband or from a third party, is, when the
transaction is attacked by existing creditors, presumed
to have been made with money furnished by the
husband.

It is insisted on behalf of appellant that if this pre-
sumption prevails, it defeats, in a material degree, the
generally recognized purpose of the married woman's
act to effect the complete business emancipation of
married women and to give them the same freedom
possessed by men and unmarried women in the pur-
chase and ownership of property; and that this is
especially true in view of the wife's incompetency as a
witness in all cases in which the presumption would
apply. This argument is not without force but it
fails to take into account the fact that the peculiarly

close and confidential relationship between the husband and wife has always been regarded as affording special facility for the perpetration of fraud, and that the statute does not affect that relationship. It is conceded by appellant (of course because of this relationship) that conveyances directly from an insolvent husband to his wife are *prima facie* actually fraudulent. The argument based upon the purpose of the statute to place a wife in the same position as a husband in respect to the purchase and ownership of property, if carried to its logical conclusion, would destroy the presumption, even in cases of deeds directly from the husband to the wife—a result which concededly is contrary to law.

It is furthermore contended, and we think successfully, that in a majority of the States having statutes similar to the married woman's law in Virginia, the courts now hold that where a wife's title to property purchased from a stranger is attacked by creditors of the husband, the burden is on them to prove the fraud. This, however, is doubtless accounted for by the fact that the decisions adopting that view have usually attached more weight in this respect to the change of property rights, and less to the unchanged domestic relationship, than is consistent with the long and uniform course of authority in this State.

A still further very insistent contention of the appellant is that this court has a free hand at this time to deal with the precise question here presented as an original proposition, for the reason that beginning with *Yates* v. *Law*, 86 Va. 120, 9 S. E. 508, being the first case to discuss the question after the passage of the married woman's law, every decision of this court upon the subject is, in one way or another, distinguishable more or less clearly from the instant case.

We have been impressed by the earnest and forceful arguments of counsel in presenting these contentions, and by the evidences of their elaborate research, and we have appreciated their frankness and their manifest desire to give the court the benefit of every authority which they could find on the subject, whether for or against them. We are, however, of opinion that the opposite view from that for which they contend has received such long and unbroken recognition in this State as to render improper and unwarranted any judicial modification of what we think must now be regarded as the established Virginia doctrine.

The authorities holding that the burden of proof is on the wife in this and kindred cases would appear to have recognized two legal presumptions, and to have rested the rule sometimes upon one, sometimes upon the other, and sometimes upon both. The first of these, a truism under the common law, is, as usually expressed, that the husband is presumed to be the owner of all the property acquired by the wife, or of which she may be in possession during the coverture. The second, as usually expressed, is that owing to the great facility which the marriage relationship affords for the commission of fraud, there is and should be, in a contest with creditors of the husband, a presumption against the good faith of the wife's claim to property, which she must overcome by affirmative proof.

In the practical employment of these presumptions, we think it will be found that the Virginia authorities have treated them as substantially co-extensive in effect and application, and have regarded the relationship of the parties, rather than the common law disabilities of the wife, as the true foundation for the rule of evidence which casts upon the wife the burden of proof.

In *Yates* v. *Law*, 86 Va. 117, 9 S. E. 508, for example, it is contended by counsel for appellant that the burden of proof was held to rest upon the wife for a reason growing out of her common law status with relation to her property rights. Certain expressions in the opinion, standing alone, lend color to this contention. The real foundation of that decision, however, was the relative situation of the parties. Judge Lewis, who delivered the opinion of the court, rested it primarily and fundamentally upon the rule of evidence applying in a contest between existing creditors of the husband and his wife touching property claimed by her under a post-nuptial settlement. His discussion, and the authorities he cities, show that in all such cases the true reason why the courts have always treated such settlements as *prima facie* voluntary and fradulent is, not the common law restrictions upon the property rights of the wife, but the domestic relationship between her and her husband, and the consequent and "convenient cover which such settlements afford a debtor to protect his property and impose upon the world." The opinion having laid this foundation, then proceeds (italics ours) as follows:

"The present case, it is true, is not a case of post-nuptial settlement, *but the doctrine of the cases just mentioned largely applies to it.*

"By the common law, marriage is an absolute gift to the husband of all the personal estate of which the wife is actually and beneficially possessed in her own right at the time of marriage, and such other personal estate as comes to her during coverture, and the principle embraces her earnings or the products of her skill and labor which the common law makes as absolutely the property of the husband as his own earnings. Burks, J., in *Campbell* v. *Bowles*, 30 Gratt. 652.

"Hence the presumption of law is—*and this presumption is not affected by the married woman's act*—that the husband is the owner of all the property, real and personal, of which the wife may be in possession during coverture, especially if they are living together as husband· and wife, and to overcome this presumption in a contest between husband's creditors and the wife, *she must show affirmatively* that the property. is her own and that it was derived from a source other than her husband and in good faith, if he be insolvent, *otherwise a wide door would be opened to fraud.*"

And it is especially to be noted that Judge Lewis, in the foregoing opinion, lays much stress upon *Sietz* v. *Mitchell*, 94 U. S. 580, 24 L. Ed. 179, referred to by him as a leading case upon the subject, and that he particularly emphasizes the holding in the latter case that, because of the relationship, purchases of either real or personal property made by the wife of an insolvent debtor during coverture are justly regarded with suspicion, unless it clearly and affirmatively appears that the consideration was paid out of her separate estate.

Judge E. C. Burks, in his address as president of the Virginia State Bar Association, commented upon the decision in *Yates* v. *Law*, *supra*, in the following connection and to the following effect:

"The almost necessary commingling of the separate personal properties of husband and wife living together as such, the facility of shifting the title of one to the other, and the difficulty of tracing and identifying the property of each, will be apt to result in more or less mischief. . . . .

"Apprehension of mischief from the causes mentioned, so far as the husband's creditors are concerned, loses much of its force in view of the rule of law laid down by our court of appeals in a recent case, though

the rule may seem to bear hardly on the wife, especially when she is not allowed to testify. Because of its importance, as applied to the separate estate of a married woman, I here quote it literally." The distinguished jurist then proceeds to quote the paragraph last above quoted from *Yates* v. *Law,* using italics of his own, except as to the last clause, just as they herein appear. (4 Va. Bar Asso'n Rep. 126.)

Mr. W. M. Lile, commenting in the Virginia Law Register (Vol. 4, P. 848) on the decision in *Hoge* v. *Turner,* 96 Va. 624, 32 S. E. 291, said: "The decision also affirms the familiar but important doctrine of *Yates* v. *Law,* 86 Va. 117, 9 S. E. 508, that in a contest between a wife and the creditors of her husband, the presumption of law is that the husband is the owner of all the property acquired or possessed by the wife during the coverture, and the burden is on her to establish otherwise. It may seem a hard case upon the wife to compel her to assume the burden of proof in such case, and yet exclude her as a witness. But, while injustice may occasionally result from the principle, we doubt if this actually occurs once in a hundred cases. If the wife in fact has honestly acquired the property, not through the husband or in fraud of his creditors, the fact can generally be established by abundant testimony. Courts are but imperfect instruments of justice at best, and many of the soundest principles of law occasionally work injustice. Our own practical experience has convinced us of the wisdom of the doctrine in question, and we should be sorry to see it abandoned or qualified."

This same learned writer, in his notes to 1 Min. Inst., at page 185, uses the following language which is strikingly pertinent here: "So prone is an insolvent husband to undertake to shield his savings from his

creditors by investing them in property purchased in his wife's name, that the principle has been established that every purchase made by the wife of an insolvent husband, though from third persons, *is presumed to have been made with money furnished by the husband*, when the transaction is attacked by his creditors; and the burden of proof is on her to show that such is not the case, but that she has a separate estate with which the purchase was made." Citing *Yates* v. *Law, supra; Hoge* v. *Turner, supra; Grant* v. *Sutton*, 90 Va. 771, 19 S. E. 784; *Kinnier* v. *Woodson*, 94 Va. 711, 27 S. E. 457; *Seitz* v. *Mitchell*, 94 U. S. 580, 24 L. Ed. 179; *Burt* v. *Timmons*, 29 W. Va. 441, 2 S. E. 780, 6 Am. St. Rep. 664. See also Mr. M. P. Burks' work on Separate Estates of Married Women, p. 19.

The doctrine of *Yates* v. *Law*, as accepted with apparent approval by these eminent writers, is expressly repeated for this court by Judge Lewis in *Grant* v. *Sutton*, 90 Va. 771, 772, 19 S. E. 784; by Judge Riley in *Hoge* v. *Turner*, 96 Va. 624, 32 S. E. 291, and by Judge Keith in *Kinnier* v. *Woodson*, 94 Va. 711, 713, 27 S. E. 457, and in *Miller* v. *Ferguson*, 110 Va. 222, 228, 65 S. E. 564. See also *Miller* v. *Gillespie*, 54 W. Va. 450, 46 S. E. 451, and *Phillips Planing Mill Co.* v. *Cross*, 75 W. Va. 303, 83 S. E. 1004. These last two cases from the Supreme Court of West Virginia, each involving purchases by the wife from a third party, place the burden of proof upon the wife, and rest the presumption which produces this result upon the marriage relationship, and not upon the wife's common law disabilities. The latter case, *Phillips, &c. Co.* v. *Cross*, like this one, was decided on bill and answer.

We have not failed to give due consideration to the industrious attack made by counsel for appellant on

the decision in *Seitz* v. *Mitchell* (U. S.), *supra,* a case which was in large measure the foundation of the leading Virginia case of *Yates* v. *Law,* and which has also received frequent and wide subsequent approval in this State. It must be admitted that counsel appear to have demonstrated that the cases cited as authority for the opinion in *Seitz* v. *Mitchell* are from States in which the present rule as to the burden of proof is the reverse of that laid down therein. It was the principle of the decision, however, in *Seitz* v. *Mitchell,* which this court adopted, and to which it has steadfastly adhered ever since. That principle is thus stated by Justice Strong:

"Purchases of either real or personal property made by the wife of an insolvent debtor during coverture are justly regarded with suspicion, unless it clearly appears that the consideration was paid out of her separate estate. Such is the community of interest between husband and wife; such purchases are so often made a cover for a debtor's property; so frequently resorted to for the purpose of withdrawing his property from the reach of his creditors and preserving it for his own use, and they hold forth such temptations for fraud, that they require close scrutiny. In a contest between the creditors of the husband and the wife, there is, and there should be, a presumption against her, which she must overcome by affirmative proof."

The courts cited by Justice Strong in support of the opinion, and which appear at present to hold to the contrary regarding the burden of proof, have necessarily adopted as the basis of decision the statutory changes in the property rights of married women. As already shown, the Virginia authorities hold that these changes have not affected the considerations which originally gave rise to, and which still support,

the rule of evidence to be applied in controversies between existing creditors of an insolvent husband and his wife.

The act of 1900, section 2286-a of the Code of Virginia, which somewhat amplified the rights of married women as conferred by former acts, and which is cited on behalf of appellant, was passed long after the decision in *Yates* v. *Law*, and manifests, as we think, no purpose to modify the rule of evidence therein established—a rule which has become so generally understood as a part of the law of this State as that, if changed at all, the change should be made by the legislature, and not by the courts.

The decree is affirmed. .

*Affirmed.*